LIVINGSTON *v.* REYNOLDS, 26 Wend. 115 123.
See Chancellor's opinion, 26 Wend. 117–119.

*Injunction ; Waste by Lessee.*

THE bill in this case was filed against tenant to restrain him from *cutting down wood for the purpose of burning bricks*, and from digging up the soil to *make bricks*. The lease contained a covenant that the lessee would "not injure, cut down, take, destroy, or carry away, upon or from the demised farm, any more wood than should be actually *used and employed thereon ;* nor make, nor suffer to be made, any manner of waste, sale, or destruction, in the wood or timber, as aforesaid, by any ways or means whatsoever,"

In May, 1838, the defendant cut about 20 cords of wood on the premises, with which in the autumn he burnt a brick

kiln, the *clay* for the brick being dug on the same lot. The bricks were burnt to be sold, and about half were sold, the rest remaining on hand. The defendant in his answer insisted that he had a right to *cut wood to burn brick;* that the wood was not needed to be left standing for any *useful purpose;* and that the land was more valuable for agricultural purposes than as wood land: And upon the answer and corroborating affidavits, he moved to dissolve the injunction.

The Chancellor dissolved the injunction, holding that the covenant in the lease above recited, did not prevent the defendant from cutting wood to burn brick *on* the premises, *provided it was not contrary to good husbandry;* and he adds: " It is *not alleged* in the bill, that the burning of bricks is an *unusual business in the neighborhood,* on this and other farms, or that it is contrary to good husbandry to use a portion of the wood for that purpose; or even that the burning of bricks is a *new business, which was not carried on there at the time of giving the lease.*"

But the Court of Errors held, that under the covenant in the lease, the acts of the tenant were *waste,* and, without regarding the grounds of the Chancellor as to what was *not alleged* in the bill—that enough was alleged to show that the *waste* was prohibited by *law,* and not authorized by the contract of the parties. 2. That even if the actual injury was such an one as in the language of the Chancellor, might not be of sufficient importance to authorize him to interpose before the complainant had established her right at law, yet as the bill was to obtain an injunction against *future waste,* rather than an account and satisfaction of the past; and as the tenant avowed his act and intention to repeat it, insisting on his right, it was not only sufficient to *justify,* but to *require* the prompt and effective interference of equity, and the interference should have been had. An account and satisfaction of the waste already committed, should be decreed, and the injunction rendered absolute and perpetual.

The court accordingly unanimously *reversed* the decree of the Chancellor, holding also, that an appeal lay from an order to *dissolve* an injunction to this court.

☞ Why not as well object to the bill, that it *did "not allege"* that the ashes were *not* spread on the land, and greatly improved it? Or that it did not state the *clay* used to be of *any value,* or that *better soil* had not been substituted in its place, &c., &c.

See Chancellor's opinion, id. p. 67.